# United States Court of Appeals
## For the First Circuit

No. 20-1527

SANG CHEOL WOO,

Plaintiff, Appellant,

v.

CHARLES C. SPACKMAN,

Defendant,

SO-HEE KIM,

Movant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Darryl Stein, with whom John Han and Kobre & Kim LLP were on brief, for appellant.
Douglas S. Brooks, with whom Joseph B. Hernandez and LibbyHoopes, P.C. were on brief, for appellee.

February 12, 2021

**SELYA**, <u>Circuit Judge</u>. This appeal requires us, as a matter of first impression in this circuit, to explore the scope and reach of 28 U.S.C. § 1963 — a statute that permits the registration of certain judgments in a federal district court. Concluding that the New York state-court judgment proffered by the appellant does not come within the statutory sweep and that no other cognizable basis for federal subject-matter jurisdiction has been shown, we affirm both the district court's order of dismissal and its denial of reconsideration.

## I. BACKGROUND

The threshold questions that we must resolve pertain to the jurisdiction of the district court to register a state-court judgment. Even so, we find it useful to start with an overview of the history and travel of the case.

The protagonists in the underlying controversy are plaintiff-appellant Sang Cheol Woo (Woo) and defendant Charles C. Spackman (Spackman). Woo accused Spackman of a violation of Korean securities laws, occurring nearly two decades ago, in connection with Woo's ownership of shares in a company, publicly listed in Korea, that Spackman controlled. Woo alleges that Spackman, acting as chief executive officer of the Korean company, engaged in a "self-dealing merger." In that merger, the Korean company acquired another entity that Spackman owned. Spackman profited handsomely, Woo alleges, even though the stock price of the Korean company

- 2 -

plummeted when it was ascertained that the acquired firm had scant value.

In the wake of this debacle, Woo and other investors sued Spackman in a Korean court for violations of Korean securities laws. After years of litigation, the Supreme Court of Korea in October of 2013 affirmed a judgment in favor of Woo and other investors for approximately $4.5 million. Spackman struggled to obtain relief from this judgment, but his final hope for a retrial was dashed by the Supreme Court of Korea in May of 2018.

Unable to collect any money from Spackman in Korea, Woo sought recognition of the Korean judgment in New York. See N.Y. C.P.L.R. §§ 5301-5309 ("Uniform Foreign Country Money-Judgments Recognition Act"). In September of 2018, a New York court recognized the Korean judgment and entered a judgment in Woo's favor for more than $13 million — a figure that included the original Korean judgment amount of approximately $4.5 million plus accrued interest at the rate of nine percent per annum — together with pro-rated interest for the year 2018. By this time, Spackman no longer challenged the finality of the Korean judgment.

Like its Korean predecessor, the New York judgment went unpaid. Seeking satisfaction, Woo repaired to the United States District Court for the District of Massachusetts and filed the New York judgment electronically on December 21, 2018, captioning that filing as a "Registration of State Court Judgment". It consisted

solely of the decision and order of the New York court. Woo then served multiple subpoenas on Spackman's wife, movant-appellee So-Hee Kim (Kim), in Cambridge, Massachusetts, seeking deposition testimony and other discovery. See Fed. R. Civ. P. 45. Woo asserted that Kim had intimate knowledge of Spackman's financial holdings in the United States and that she and Spackman maintained a shared residence in Massachusetts within the territorial limits of the district court's subpoena power. See Fed. R. Civ. P. 45(c). Kim moved to quash, arguing (among other things) that the district court lacked subject-matter jurisdiction over the underlying matter because the registration statute upon which Woo relied, 28 U.S.C. § 1963, only authorized district courts to register judgments of other federal courts. Woo opposed the motion to quash.

The district court concluded that section 1963 did not authorize the registration of state-court judgments and that, therefore, it lacked subject-matter jurisdiction. See Woo v. Spackman (Woo I), 2019 WL 6715134, at *1 (D. Mass. Dec. 10, 2019). The court expressed the view that this conclusion aligned it with the weight of authority elsewhere. See id. at *2-3. Accordingly, it dismissed the matter for want of subject-matter jurisdiction and dispensed with other pending motions (including Kim's motion to quash) as moot. See id. at *3.

Woo moved to reconsider, suggesting for the first time that federal subject-matter jurisdiction might exist by reason of diversity of citizenship and amount in controversy. See 28 U.S.C. § 1332(a). The district court denied this motion. See Woo v. Spackman (Woo II), 2020 WL 1939692, at *1 (D. Mass. Apr. 22, 2020).

This timely appeal followed. In it, Woo challenges both the district court's order of dismissal and its denial of reconsideration.[1]

**II. ANALYSIS**

On appeal, Woo advances a gallimaufry of arguments. We first consider his argument that section 1963 is itself a source of federal jurisdiction because — in his view — it authorizes a federal court to register a state-court judgment. We then consider Woo's remaining arguments, each of which suggests that the district court possessed some alternate basis for subject-matter jurisdiction.[2]

**A. Registration Under 28 U.S.C. § 1963.**

Woo's principal argument is that 28 U.S.C. § 1963 permits a district court to register a state-court judgment. This

---

[1] Spackman was not served below, and he has not filed a brief on appeal.

[2] In the district court, Woo also argued that the New York judgment was entitled to full faith and credit in federal court, see 28 U.S.C. § 1738, and that federal jurisdiction could be premised on this circumstance. This argument has not been renewed on appeal and, thus, we deem it abandoned. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 5 -

argument gives rise to a question of law regarding the district court's subject-matter jurisdiction and, thus, engenders de novo review. See Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

By its terms, 28 U.S.C. § 1963 authorizes federal courts to register certain judgments entered by certain other courts. The relevant text provides:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final . . . .

28 U.S.C. § 1963. Our task, then, is to determine whether "[a] judgment . . . in any court of appeals, district court, bankruptcy court, or in the Court of International Trade" encompasses judgments entered by state courts.

In making this determination, we do not write on a blank slate. Three of the four courts of appeals that have addressed the issue directly have held that the reach of section 1963 does not extend that far. See Caballero v. Fuerzas Armadas Revolucionarias de Colombia, 945 F.3d 1270, 1274 (10th Cir. 2019); Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d 96, 122-23 (2d Cir. 2017); Fox Painting Co. v. NLRB, 16 F.3d 115, 117 (6th Cir. 1994). And the fourth such court, while less

- 6 -

definitive, has not held to the contrary.  See GE Betz, Inc. v. Zee Co., 718 F.3d 615, 625 (7th Cir. 2013).

Against this backdrop, we begin our inquiry with first principles.  Statutory interpretation ought to start with the statutory text.  See Plumley v. S. Container, Inc., 303 F.3d 364, 369 (1st Cir. 2002).  As a general matter, moreover, courts should strive to interpret statutes so that each word in the statutory text has meaning.  See Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995); Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 94 (1st Cir. 2020).

The text of section 1963 states that a judgment from a rendering court may be registered in "any other district or, with respect to the Court of International Trade, in any judicial district."  28 U.S.C. § 1963 (emphasis supplied). Read in context, Congress's use of the word "other" strongly suggests that the rendering court and the registering court must be part of the same family of courts.  It is clear beyond peradventure that section 1963 identifies only federal courts as registering courts, and we think it follows that the rendering court must be a federal court as well.  To hold otherwise would be to ignore Congress's carefully chosen wording.  After all, if Congress had intended the statute to include judgments originating in state courts, it would make no sense to refer to the registering court as "any other district."

The overall contours of the statutory text are consistent with this view. Congress twice amended the statute's list of rendering courts over the last few decades, see 28 U.S.C. § 1963 (1988); id. § 1963 (1996), but on each occasion it specified particular federal courts that could serve as rendering courts. If Congress had wanted section 1963 to apply to all courts (federal and state), there would have been no need for it to enumerate particular federal courts from which a judgment could emanate. Reading section 1963 to encompass both federal and state courts as rendering courts would make the statute's enumeration of particular federal courts superfluous — and it is apodictic that we should avoid, when possible, interpretations of a statute that will render words in the statutory text superfluous. See Nat'l Ass'n of Mfrs. v. Dep't of Def., 138 S. Ct. 617, 632 (2018); City of Providence v. Barr, 954 F.3d 23, 37 (1st Cir. 2020).

There is more. The courts listed in the statute as possible originators of the underlying judgment track the constituent courts that, in the aggregate, comprise virtually the whole of the federal judicial system. Although Woo notes that certain states have "court[s] of appeal[s]" and "district court[s]," many states do not. We think it outlandish to suggest that Congress intended to make the availability of section 1963's registration procedure dependent upon the nomenclature that a state happens to assign to its courts, and we do not read section

- 8 -

1963 as accomplishing so curious a result. Cf. Inmates of Suffolk Cnty. Jail v. Rouse, 129 F.3d 649, 655 (1st Cir. 1997) (recognizing that courts should avoid statutory interpretations that produce "bizarre" results).

Swimming upstream, Woo attempts to rely on the Seventh Circuit's decision in GE Betz as authority for the proposition that section 1963 authorizes a federal court to register a state-court judgment. As we explain below, his reliance is misplaced.

In GE Betz, the court considered a case in which the plaintiff sought to register a state-court judgment in another state. See 718 F.3d at 617. The defendant removed the case to federal court, alleging that the requirements for removal under 28 U.S.C. § 1441 (including the existence of diversity jurisdiction) were satisfied. See id. at 618. The plaintiff objected to the removal and sought a remand, contending that removal was improper because section 1963 barred federal courts from registering state-court judgments. See id. at 623.

The Seventh Circuit addressed only a narrow issue as to whether section 1963 prohibits federal courts from registering and enforcing state-court judgments (even where alternate grounds for federal jurisdiction exist). See id. at 624-25. The court concluded that "§ 1963 does not prohibit the removal of all matters related to the registration of state-court judgments." Id. at 625. It added that a federal court may enforce a state-court

- 9 -

judgment if "other requirements for federal jurisdiction" are met. Id. at 624.

Contrary to Woo's importunings, the GE Betz court did not hold that section 1963 itself authorized federal courts to register state-court judgments. Although the court described the statute as "ambiguous" and "not clear," id., it decided only that section 1963 did not bar the registration of state-court judgments where another basis for jurisdiction was manifest, see id. at 625. The court went on to examine alternate jurisdictional theories — a necessary corollary of its conclusion that section 1963 itself does not authorize the registration of a state-court judgment in a federal district court. See id.

That ends this aspect of the matter. We hold that section 1963 says what it means and means what it says. We thus conclude that section 1963 does not, in and of itself, authorize federal courts to register state-court judgments. Even so, we recognize — as did the Seventh Circuit in GE Betz, see id. — that section 1963 does not foreclose other avenues for enforcing a state-court judgment in federal court where some independent basis for federal jurisdiction exists.[3] Thus, we turn to Woo's claim that there are independent grounds for federal jurisdiction here.

---

[3] The statute itself makes this clear: section 1963 states, in relevant part, that "[t]he procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments." Nothing in the statutory text (or

- 10 -

B. **Alternate Grounds for Jurisdiction**.

With respect to alternate grounds for federal jurisdiction, Woo chiefly argues that the district court had jurisdiction by reason of diverse citizenship and the existence of a controversy in the requisite amount. See 28 U.S.C. § 1332(a). This argument, however, faces a high hurdle: prior to the district court's entry of its order of dismissal, Woo never so much as hinted at the presence of diversity jurisdiction. Instead, Woo surfaced his diversity-of-citizenship theory for the first time in his motion for reconsideration.

We assay "the denial of a motion for reconsideration for abuse of discretion." Caribbean Mgmt. Grp. v. Erikon LLC, 966 F.3d 35, 44 (1st Cir. 2020). In general terms, such a motion is a vehicle for a party either to bring forth previously unavailable evidence or to show "that the original judgment was premised on a manifest error of law or fact." Id. at 44-45 (quoting Ira Green, Inc. v. Mil. Sales & Serv. Co., 775 F.3d 12, 28 (1st Cir. 2014)). Woo's motion for reconsideration, though, did not satisfy either of these criteria. In it, he pointed to no newly discovered evidence previously unavailable to him; nor did he identify any mistake of law or fact purportedly infecting the district court's

---

elsewhere, for that matter) indicates that section 1963 shuts the federal court's doors to other possible mechanisms for enforcement of a state-court judgment.

- 11 -

order of dismissal. As relevant here, the motion sought to advance, for the first time, a new and previously unmentioned theory of jurisdiction — a theory that had been available to Woo all along.

Woo's attempt to shoehorn a new and previously available theory into a motion for reconsideration distorts the office of such a motion. At the same time, the absence of any pleaded jurisdictional facts runs counter to the principle that "[f]ederal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see In re Olympic Mills Corp., 477 F.3d 1, 6 (1st Cir. 2007). Given this principle, it is irrefragable that the burden of establishing jurisdiction must fall to the party who asserts it. See Kokkonen, 511 U.S. at 377; Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996). Thus, we have held that a party asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332 must allege facts sufficient to show that the requirements for such jurisdiction are satisfied in the particular case. See, e.g., Bearbones, Inc. v. Peerless Indem. Ins. Co., 936 F.3d 12, 15 (1st Cir. 2019); Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 40-41 (1st Cir. 2016); see also Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1163 n.1 (1st Cir. 1991) (holding bare reference to 28 U.S.C. § 1332 in string citation not enough to make out claim of diversity jurisdiction).

- 12 -

Woo made no such allegations here. His initial filing in the district court contained no allegations at all concerning the parties' citizenship,[4] nor did he even mention — in any pleading, memorandum, or other document served prior to his motion for reconsideration — the possibility that diversity jurisdiction might exist. Thereafter, Woo made two filings in response to Kim's motion to quash, but neither filing contained either an assertion that diversity jurisdiction existed or facts adumbrating the existence of such jurisdiction. Woo's second reply is especially telling because — after Kim had raised the specter of a jurisdictional defect — Woo expounded on other possible jurisdictional theories but did not mention the possibility of diversity jurisdiction.

Woo did, of course, refer to diversity of citizenship in his motion for reconsideration. Here, however, that was too late. "A motion for reconsideration is not the venue to undo procedural snafus or permit a party to advance arguments [he] should have developed prior to judgment." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014). As we have explained, when a plaintiff fails properly to develop a theory in his filings prior

---

[4] Woo's initial fourteen-page filing consisted solely of the New York court decision and order. Those documents contained no assertions concerning the parties' citizenship. Nor did Woo at any point either amend or move to amend his initial filing to include that information.

- 13 -

to dismissal of his action, there can be "no abuse of discretion in the district court's refusal to address that theory on a motion for reconsideration." Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006); see Caribbean Mgmt., 966 F.3d at 45 ("[I]t is settled beyond hope of contradiction that, at least in the absence of exceptional circumstances, a party may not advance new arguments in a motion for reconsideration when such arguments could and should have been advanced at an earlier stage of the litigation."). So it is here.

Little more need be said.[5] Jurisdiction is the cornerstone of every federal court action, and "jurisdictional facts ought to be gathered and assessed before an action is commenced." Bearbones, 936 F.3d at 16. It follows, as night follows day, that the district court's rejection of Woo's belated effort to switch jurisdictional horses midstream was well within the compass of its discretion.

Woo has another arrow in his quiver. He argues that the district court could have exercised jurisdiction to register the judgment simply by availing itself of Massachusetts law. In support, he points to a pair of Massachusetts statutes which, he says, provide authority for the district court to register the New

---

[5] Given our conclusion, we need not reach Kim's argument that even if the citizenship and amount-in-controversy requirements were met, Woo's attempted registration of the state-court judgment does not constitute a "civil action[]" under 28 U.S.C. § 1332(a).

York judgment. See Mass. Gen. Laws ch. 218 § 4A ("Massachusetts Uniform Enforcement of Foreign Judgments Act"); id. ch. 235 § 14(a) ("Executions in actions on judgments").[6]

This argument is futile. To begin, chapter 218, § 4A was not even in effect at the time Woo attempted to register his state-court judgment in the district court. Woo attempted to register the judgment by filing it on December 21, 2018. But chapter 218, § 4A did not take effect until April 1, 2019.

In all events, there is an even more fundamental flaw in Woo's argument. The availability of state enforcement mechanisms in this case is dependent upon the antecedent establishment of federal jurisdiction (by, say, the proper registration of an underlying judgment or pleading facts sufficient to satisfy the requirements of the diversity statute). See Fed. R. Civ. P. 69(a); Burgos-Yantín v. Mun. of Juana Díaz, 909 F.3d 1, 8-9 (1st Cir. 2018) (per curiam); see also 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3011 (3d ed. 2014 & Supp. 2020). A putative plaintiff cannot unlock the door to a federal forum merely because some state remedial mechanism would seem to suit his purposes. See U.S.I. Props. Corp. v. M.D. Constr. Co.,

---

[6] The first of these state statutes, chapter 218, § 4A, describes the circumstances in which a Massachusetts court may register a foreign judgment. The second of these state statutes, chapter 235, § 14(a), requires that a plaintiff deliver a copy of a foreign judgment to the registering court.

- 15 -

230 F.3d 489, 498 n.8 (1st Cir. 2000) ("Nor is it sufficient to rely on the incorporation of state procedures in Rule 69(a) to establish federal enforcement jurisdiction.")  An independent showing of federal jurisdiction is a sine qua non to the use of such state-law mechanisms in a federal court.  Indeed, Woo's brief seems to acknowledge that Massachusetts procedures would be available only after the requirements for diversity jurisdiction have been satisfied.  Given our conclusion that Woo has not successfully invoked the district court's diversity jurisdiction, see text supra, the district court had no way to avail itself of Massachusetts law in order to register the New York state-court judgment.

We add a coda.  It is of no consequence that Woo identifies what he describes as "more than 70 state-court judgments" that district courts sitting in the District of Massachusetts have previously enforced.  There is no indication that jurisdiction was contested in any of those cases and, thus, they have no precedential force. So, too, the cases that Woo cites in an effort to demonstrate that federal courts "repeatedly" enforce foreign judgments under state law are inapposite.  In each of them, the resort to state procedures coincided with the existence of federal jurisdiction.  See, e.g., Wright v. Bank of Am., N.A., 517 F. App'x 304, 306 (6th Cir. 2013) (affirming district court's enforcement of state-court judgment while sitting

- 16 -

in diversity); Endocare, Inc. v. Technologias Urologicas, Inc., 950 F. Supp. 2d 341, 344 (D.P.R. 2013) (explaining that district court has authority to enforce state-court judgment while exercising diversity jurisdiction).

To say more would be to paint the lily. We conclude that, in the circumstances at hand, Woo's alternate grounds for jurisdiction cannot rescue his case.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the district court's order of dismissal for want of subject-matter jurisdiction and its denial of Woo's motion for reconsideration are both

**Affirmed.**

- 17 -